## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDY GORBY,** | : | **No. 3:14cv2195** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | **(Magistrate Judge Cohn)** |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is Plaintiff Brandy Gorby's appeal of

the defendant's denial of her application for supplemental security income

benefits.  Plaintiff suffers from depression, anxiety, attention deficit-

hyperactivity disorder and oppositional defiant disorder, which render her

completely unable to function outside of her home according to her treating

psychiatrist.  Magistrate Judge Gerald B. Cohn issued a report and

recommendation (hereinafter "R&R") suggesting that the appeal be denied.

Plaintiff has filed objections to the R&R, bringing the case to its present

posture.

## **Background**[1]

---

[1]This background section addresses only the procedural background
of the case.  The factual background is addressed where appropriate
below.

Plaintiff applied for supplemental security income[2] (hereinafter "SSI") under the Social Security Act, 42 U.S.C. §§ 401-433 on May 3, 2013. (Doc. 11, Administrative Record (hereinafter "R.") at 18).  The Bureau of Disability Determination denied the application on July 12, 2013.  (R. at 58-74).  Plaintiff then requested a hearing before an Administrative Law Judge (hereinafter "ALJ").  (R. at 77-79).  ALJ Patrick Cutter held a hearing on June 4, 2014 and issued a decision on June 12, 2014 finding that plaintiff is not disabled and not entitled to benefits.  (R. at 11-36).  Plaintiff requested review by the Appeals Council.  (R. at 8-10).  The Appeals Council denied review on September 16, 2014.  (R. at 1-6).  Thus, the decision of the ALJ became the "final decision" of the Social Security Commissioner.  See Sims v. Apfel, 530 U.S. 103, 107 (2000).

On November 17, 2014, plaintiff instituted the instant action pursuant to 42 U.S.C. § 405(g) appealing the decision of the Commissioner.  (Doc. 1).  The Commissioner answered the complaint and filed the administrative transcript of proceedings on January 21, 2015.  (Doc. 10, 11).  The parties

---

[2]Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes).  42 U.S.C. § 1381.  It is designed to help the aged, blind or disabled individuals who have little or no income.  42 U.S.C. § 1381a.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.  42 U.S.C. § 1382.

briefed their respective positions, and the court referred the matter to

Magistrate Judge Cohn for the issuance of an R&R.

On March 3, 2016, Magistrate Judge Cohn issued his R&R,

recommending the denial of plaintiff's appeal.  (Doc. 17).  Plaintiff then filed

objections to the report and recommendation.  (Doc. 18).  The government

waived the opportunity to respond to the objections.  (Doc. 19).  The case

is thus ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security

Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final

determination of the Commissioner of Social Security after a hearing under

paragraph (1) shall be subject to judicial review as provided in section

405(g) of this title to the same extent as the Commissioner's final

determinations under section 405 of this title."); see also 42 U.S.C. §

405(g) ("Any individual, after any final decision of the Commissioner of

Social Security made after a hearing to which he was a party, irrespective

of the amount in controversy, may obtain a review of such decision by a

civil action commenced within sixty days after the mailing to him of notice

of such decision or within such further time as the Commissioner of Social

Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

This case is before the court on objections to the magistrate judge's R&R.  To dispose of such objections, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision.  See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other

5

evidence in the record," <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981)

and "must take into account whatever in the record fairly detracts from its

weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971).

"When a conflict in the evidence exists, the ALJ may choose whom to

credit but 'cannot reject evidence for no reason or for the wrong reason."

<u>Plummer</u>, 186 F.3d at  429 (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058,

1066 (3d Cir. 1993)).   The Commissioner must indicate which evidence

was accepted, which evidence was rejected, and the reasons for rejecting

certain evidence.  <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 204 (3d

Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner

must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968,

970 (3d Cir. 1981).

**Discussion**

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an

"inability to engage in any <u>substantial gainful activity</u> by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §

6

423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates supplemental security income claims with a five-step sequential analysis.  20 C.F.R. § 416.920(a)(4).  This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[3] (2) has an impairment, or combination of impairments, that is severe,[4] (3) has an

---

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 416.910.  If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[4] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c).  If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 416.920(d)-(g).  Furthermore, all medically

7

impairment or combination of impairments that meets or equals the

requirements of a "listed impairment,"[5] (4) has the "residual functional

capacity" to return to his or her past work and (5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §

416.920(a)(4)(i)-(v).  As part of step four, the administrative law judge must

determine the claimant's residual functional capacity.[6]  20 C.F.R.

 §416.920(a)(4)(iv).

---

determinable impairments, severe and non-severe, are considered in the
subsequent steps of the sequential evaluation process.  20 C.F.R. §§
416.923 and 416.945(a)(2).  An impairment significantly limits a claimant's
physical or mental abilities when its effect on the claimant to perform basic
work activities is more than slight or minimal.  Basic work activities include
the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and
handle. 20 C.F.R. § 404.1545(b).  An individual's basic mental or
non-exertional abilities include the ability to understand, carry out and
remember simple instructions, and respond appropriately to supervision,
coworkers and work pressures.  20 C.F.R.
§ 1545(c).

  [5] A "listed impairment" is one that appears on the Commissioner's
Listing of Impairments, which is "a list of impairments presumed severe
enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521,
525 (1990).  If the claimant has an impairment, or combination of
impairments, that meets or equals a listed impairment, the claimant is
disabled. If the claimant does not have an impairment or combination of
impairments that meets or equals a listed impairment, the sequential
evaluation process proceeds to the next step.

  [6] If the claimant has the residual functional capacity to do his or her
past relevant work, the claimant is not disabled.

8

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See SSR 96-8p, 1996 WL 374184.  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. Id.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. § 416.945; Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

In the instant case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the date the application was filed.  (R .at 19).  In fact, plaintiff had only reached seventeen years of age at the time that she filed her application.  (R. at 18).  The ALJ found that the plaintiff had severe impairments of depression, anxiety, attention deficit-hyperactivity disorder and oppositional defiant disorder.  (R. at 19, 26).   Plaintiff does not, however, have an impairment or combination of impairments that meets or medically equals a listed impairment according to the ALJ.  (R. at 26).  The ALJ found that plaintiff has the residual functional capacity to perform routine, repetitive one and two-step tasks,

9

with a toleration of occasional changes to the work environment.  Further,

the ALJ found that plaintiff is capable of occasional decisionmaking and

occasional interaction with the public, co-workers and supervisors.  (R. at

28).

The ALJ found that plaintiff had "past relevant work" as a "cook's

helper", a job that plaintiff performed for two weeks.  (R. at 30).  She is

currently able to perform this past relevant work according to the ALJ.  (Id.)

Further, the vocational expert at the plaintiff's hearing found that someone

with plaintiff's residual functional capacity could perform other work in the

national economy such as laundry laborer, bakery worker-conveyor line,

and cleaner-housekeeper.  (R. at 30-31).  Thus, the ALJ concluded that

plaintiff is not disabled as defined by the Social Security Act.  (R. at 32).

As explained above, the ALJ's decision became the final decision of the

Commissioner.  Plaintiff then appealed to this court.  The Magistrate Judge

suggests that substantial evidence supports the ALJ's decision, and

therefore, the instant appeal should be denied.  Plaintiff then filed the

instant objections.

Plaintiff objects to the following three conclusions of the R&R: 1) the

finding that substantial evidence supports the ALJ's assignment of weight

to the medical opinions and the Listing assessment; 2) the finding that substantial evidence supports the ALJ's credibility evaluation with regard to Global Assessment of Functioning ("GAF") scores; and 3) the finding that substantial evidence supports the ALJ's Step Two finding with regard to obesity.  We will address these issues *in seriatim*.

**1.  Assignment of weight to the medical opinions and the Listing assessment**

The first issue raised by the plaintiff involves the manner in which the ALJ weighed the medical opinions.  The record in this case contains only two medical opinions, one from Michael Suminski, PhD, who reviewed plaintiff's file and authored an opinion.  (R. at 60-64).  The second opinion is very different and comes from Muhtaz Jameel, M.D., plaintiff's treating physician.

In his decision, the ALJ accorded little weight to the opinion of Dr. Jameel, the treating physician and significant weight to the opinion of Suminski a State Agency Psychological Consultant.  (R. at 29-30).  The significance of this weighing of the medical opinions is that Dr. Jameel indicated that plaintiff is unable to engage in substantial gainful activity.  He noted plaintiff's symptoms as bipolar syndrome; recurrent severe panic attacks; intense and unstable interpersonal relationships; generalized

persistent anxiety; mood disturbance; difficulty thinking or concentrating;

psychomotor anhedonia; appetite disturbance; decreased energy; suicidal

thoughts; blunt, flat or inappropriate affect; and impulse control impairment.

Specifically, Dr. Jameel noted in a medical source statement dated

September 18, 2013, the following: (R. at 481).

> Plaintiff suffers from symptoms of anhedonia, appetite disturbance, decreased energy, thoughts of suicide (sometimes); blunt, flat or inappropriate affect; impairment in impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; change in personality; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes; intense and unstable interpersonal relationships; emotional lability; pressures of speech; easy distractiblity; autonomic hyperactivity; sleep disturbance and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and a sense of impending doom, occurring on the average of at least once a week.

(R. at 477). He further noted that while she had no restrictions of activities

of daily living, she had "marked" difficulties in maintaining social functioning

and a complete inability to function independently outside the area of her

home.  (R. at 480).  The treating psychiatrist further noted that the

plaintiff's impairment lasted or could be expected to last at least twelve (12)

12

months, and that she is not a malingerer.  (R. at 481).

Despite the treating psychiatrist's opinion regarding these serious psychiatric symptoms and disorders and the opinion that plaintiff had a **complete inability** to function independently outside the area of her home, the ALJ concluded that she is not disabled.  Rather than relying upon the medical doctor/psychiatrist who treated plaintiff in determining the plaintiff's residual functional capacity, the ALJ relied upon the psychological opinions of the state agency psychological consultant who neither treated nor examined plaintiff.  Thus, we must determine whether the ALJ's decision to credit a psychologist who never examined the plaintiff over a psychiatrist who treated the plaintiff for several years is supported by substantial evidence.  We find that it is not.

The law provides that we should accord treating physicians' reports great and possibly controlling weight.  Specifically, the Third Circuit has explained :

> Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and

13

> not inconsistent with other substantial evidence in
> the record.)  An ALJ may reject a treating
> physician's opinion outright only on the basis of
> contradictory medical evidence, but may afford a
> treating physician's opinion more or less weight
> depending upon the extent to which supporting
> explanations are provided.
> Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.
> 1985).

Plummer, 186 F.3d at 429.

The Third Circuit has further explained the importance of treating

physicians' opinions as follow:

> Under applicable regulations and the law of [the
> Third Circuit], opinions of a claimant's treating
> physician are entitled to substantial and at times
> even controlling weight. . . . The regulations explain
> that more weight is given to a claimant's treating
> physician because these sources are likely to be
> medical professionals most able to provide a
> detailed, longitudinal picture of [the claimant's]
> medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone
> or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

Fargnoli, 247 F.3d at 43 (internal quotation marks and citations omitted).

"Where, as here, the opinion of a treating physician conflicts with that

of a non-treating, non-examining physician, the ALJ may choose whom to

credit but cannot reject evidence for no reason or for the wrong reason."

14

Morales v. Apfel, 186 F.3d 310, 317 (internal quotation marks omitted).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  Id. (internal quotation marks omitted).

In the instant case, the conclusion with regard to the treating physician is set forth in the ALJ's decision as follows:

"I give little weight to the medical source statement submitted by Dr. Jameel.  Despite his medical source statement indicating marked impairments, his longitudinal treatment notes indicate only mild symptoms and consistent Global Assessment of Functioning scores of 70 during the period after the claimant's 18th birthday."  (R. at 30).  The ALJ then notes that "the claimant reported significant benefit from her prescribed medications prior to her pregnancy.  This report remained true throughout the claimant's reported continued stability as recently as March 2014, when she was not taking her medications due to pregnancy."  Id.

Next, the ALJ asserts that plaintiff's claims of extreme disabling mental impairments are not supported by the medical evidence of record

and that by her own admission she is able to perform a wide variety of the

activities of daily living such as cleaning, laundry, meal preparation,

shopping, caring for animals and handling money.  Id.

Basically the ALJ disagreed with the treating physician because he

(the ALJ) deemed the claimant's symptoms mild, she (the claimant) had a

GAF score of 70, and the plaintiff's medicine benefitted her.[7]  Substantial

evidence does not support these findings.  The ALJ's lay opinion that the

doctor's "longitudinal treatment notes" only show mild symptoms is an

inappropriate ground to disregard the treating psychiatrist's opinion.  An

ALJ may not evaluate medical evidence based on his own lay opinion.

Plummer v. Apfel, 186 F.3d at 429.  That, however, appears to be what the

ALJ did here when he concluded that Dr. Jameel's medical source

statement is worthy of only little weight because his treatment notes

indicate only mild symptoms and a good response to medicines.  (R. at

30).

Additionally, the opinion of the treating physician is so different from

the opinion of the non-examining, non-treating, consultative psychologist

that we find that the consultative psychologist's opinion does not provide

---

[7]We will explain the "GAF" score more fully in the next section.

16

substantial evidence for the ALJ's opinion.  The treating psychiatrist concludes that the plaintiff is quite severely impaired and unable to function independently outside of the home.  The consultative psychologist reviewed the psychiatrist's records and concluded that the treating psychiatrist is wrong in his assessment and that the plaintiff is not disabled and does not have any marked limitations.

The treating physician did not provide his opinion in a vacuum. Medical records from the treating physician are also presented to support his conclusions.  The consulting psychologist, who is not a psychiatrist as the treating physician is, reviewed those records and disagrees with the treating physician.  We find the decision to credit the consulting psychologist over the treating psychiatrist is not supported by substantial evidence in this instance.  See, e.g., Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998) ("The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").

Lastly, the ALJ bases his opinion on the fact that plaintiff indicates that she can perform activities of daily living.  We do not agree with the ALJ.  Performing functions in the home and performing function at the

17

workplace are two separate activities, especially when a potential

employee suffers from psychiatric disorders.   Thus, merely because

plaintiff can perform her activities of daily living does not mean that she can

be gainfully employed in a workplace setting.

Based upon all of these factors, we find that the ALJ's decision is not

supported by substantial evidence, and we will remand this matter to the

commissioner for review and proper analysis of the record.

**2.  The finding that substantial evidence supports the ALJ's credibility evaluation with regard to Global Assessment of Functioning ("GAF") scores**

The second issue raised by plaintiff also deals with the manner in

which the ALJ weighed the treating physician's opinion.  The ALJ

discredited the treating physician's opinion because of the plaintiff's GAF

score.   We find that the ALJ erred in his analysis of the GAF score.

A GAF score is a subjective scale that was set forth in the American

Psychiatric Associations' Diagnostic and Statistical Manual of Mental

Health (hereinafter "DSM").  The score  "assesses how well an individual

can function according to psychological, social, and occupational

parameters, with the lowest scores assigned to individuals who are unable

[to] care for themselves."  Pounds v. Astrue, 772 F. Supp. 2d 713, 716, n. 2

(W.D. Pa.2011); DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS (FOURTH).

The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 3–32 (FOURTH). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id.   In the past, the score was seen as useful in planning treatment and predicting outcomes. Id.

A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61-70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well,

19

has some meaningful interpersonal relationships.  Id.

The law, however, provides that "[a] GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings."  Id. at 723 (see also Gilroy v. Astrue, 351 F. App'x  714, 715 (3d Cir. 2009) (citing 66 Fed. Reg. 50764-5 (2000)).

Moreover, the latest edition of the DSM recommended that the GAF scoring scale be discontinued.  It explained that the GAF scale has a conceptual lack of clarity and "questionable psychometrics in routine practice."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (FIFTH) at 16.  Thus, the latest edition of the American Psychiatric Association's DSM does not contain the GAF scale.  It is apparent that GAF scores are of limited value in determining whether an individual is disabled.  Accordingly, we find that the GAF score does not provide substantial evidence for the ALJ. to discredit plaintiff's treating physician.

**3.  Step Two severe impairment analysis with regard to obesity**

Lastly, plaintiff contends that the ALJ's failure to determine that her obesity is a medically determinable severe mental or physical impairment at step two of the five-step sequential evaluation process is erroneous.[8]

---

[8] Step two requires the plaintiff to establish that she has an impairment, or combination of impairments, that is severe, and these impairments

The ALJ, however, failed to reflect any obesity-based limitation in her RFC. Thus, according to the plaintiff, the ALJ's decision was improper.  After a careful review, we agree with plaintiff, and we will order the ALJ to consider plaintiff's obesity on remand.

The ALJ did not take the plaintiff's obesity into consideration when reviewing the claim.  Plaintiff is 5' 2" tall and weighs between 210-245 pounds. (R. at 353, 218, 484).  Her body mass index ranges from 31.5 to 45.1. (R. at 218, 264, 353, 484).  Step II of the Social Security review requires the ALJ to determine whether the claimant has a severe impairment or a combination of impairments that is severe.  As noted above, in Step II the ALJ concluded that plaintiff has the following severe impairments: depression, anxiety , attention deficit-hyperactivity disorder, and oppositional defiant disorder.  (R. at 19). Plaintiff argues that the ALJ erred in not considering the effect of plaintiff's obesity, individually and in combination with her impairments on her workplace function at Step II and the subsequent steps.

Social Security regulations instruct on the manner in which obesity is

significantly limit her mental or physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c).

to be evaluated.  It indicates that persons with a BMI of 30.0 or above are obese.  The regulations explain further: "The Clinical Guidelines recognize three levels of obesity.  Level I includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."  Plaintiff fluctuated between Level I obesity and Level III, extreme, obesity with a BMI of 31.5 to 45.1.  In determining the proper weight to be given to a medical opinion, the ALJ is required to weigh all the evidence and resolve any material conflicts.  See Richardson v. Perales, 402 U.S. 389, 399 (1971).

At step two, the claimant must have a severe impairment "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's

ability to work.'" Id. (quoting SSR 85-28, 1985 WL 56856, at *4).[9]

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." Id. (quoting Bowen v. Yuckert, 482 U.S. 137, 158, (1987) (O'Connor, J., concurring)). If the claimant can present evidence establishing more than a "slight abnormality," the severity requirement is met. Id. Further, any reasonable doubts in step two should be resolved in the claimant's favor. Id. A reviewing court, however, should not apply a more stringent standard of review. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence. Id. (citation omitted).

In McCrea, the Third Circuit Court of Appeals reiterated that the "burden placed on an applicant at step two is not an exacting one." Id. Although the social security regulations speak in terms of "severity," the

---

[9]  SSR 85-28 states that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." 1985 WL 56856, at *4.

Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Id. (citing SSR 85-28, 1985 WL 56856, at *3).

McCrea instructs that the determination of whether an applicant has met her burden at step two in the sequential analysis should focus upon her evidence.  If such evidence demonstrates that the applicant has "more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Id. at 362; 20 C.F.R. § 404.1520(d)-(f).

Here, it appears that plaintiff did not raise the issue of her obesity initially before the ALJ.  Upon remand, however, the Commissioner will be instructed to examine whether plaintiff's obesity is a severe impairment.

**Conclusion**

We will remand this case to the Commissioner because substantial evidence does not support the ALJ's opinion.  The ALJ improperly relied upon the GAF score, gave controlling weight to the consulting psychologist and failed to determine whether plaintiff's obesity is a severe impairment. An appropriate order follows.

**Date: Jan. 11, 2017**                    s/ James M. Munley
                                           **JUDGE JAMES M. MUNLEY**
                                           **United States District Court**